# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| GLENN SCHWEIGER, | * | |
| Appellant | * | |
| v. | * | CIVIL NO. JKB-17-3255 |
| MIDFIRST BANK, | * | |
| Appellee | * | |

## MEMORANDUM

Glenn Schweiger appeals the order of the Bankruptcy Court granting Appellee MidFirst Bank's request for relief from the automatic stay. The appeal has been briefed (ECF Nos. 5, 6), and the matter is ready for decision. No hearing is necessary. Local Rule 105.6 (D. Md. 2016). The Bankruptcy Court's order will be affirmed.

## *I. Background*

According to documents filed in the Bankruptcy Court, Schweiger executed a deed of trust on April 10, 2007, to secure the repayment of a mortgage loan on the residential property of 4421 Shamrock Avenue, Baltimore, Maryland 21206. (Bankr. D. Md. No. 17-19857, ECF Nos. 19-2, 19-3.) At some point, the loan went into default. A foreclosure proceeding was filed by the substitute trustees on May 25, 2017, in the Circuit Court for Baltimore City. (Case No. 24O17001022.) A notice dated June 29, 2017, was sent to Schweiger stating that a foreclosure sale would be conducted on July 20, 2017, at 11:00 a.m., by public auction at the

courthouse door. (Bankr. D. Md. No. 17-19857, ECF No. 4.) The sale occurred at the appointed time.[1] (*Id.*)

At 11:38 a.m., roughly half an hour after the foreclosure sale on July 20, 2017, Schweiger filed his Chapter 7 petition. (*Id.* ECF No. 1.) On September 12, 2017, MidFirst Bank filed its motion for relief from the automatic stay in order to continue with the foreclosure proceedings, including eviction of the property's occupants. (*Id.* ECF No. 19.) On September 26, Schweiger moved to convert his case from Chapter 7 to Chapter 13, and the motion was granted on September 28. (*Id.* ECF Nos. 21, 22.) The Bankruptcy Court thereafter conducted a hearing on MidFirst's motion and granted the motion, thereby allowing MidFirst to proceed with the ratification of the foreclosure sale and to secure possession of the property. (*Id.* ECF No. 29.)

## II. Standard of Review

In an appeal from Bankruptcy Court, this Court reviews factual findings for clear error and conclusions of law *de novo*. *Gold v. First Tenn. Bank Nat'l Ass'n (In re Taneja)*, 743 F.3d 423, 429 (4th Cir. 2014). A finding is clearly erroneous only if, after reviewing the record, the reviewing court is left with "a firm and definite conviction that a mistake has been committed." *Klein v. PepsiCo, Inc.*, 845 F.2d 76, 79 (4th Cir. 1988).

## III. Question Presented

As stated by Schweiger, the question presented to this Court is, "Did the Bankruptcy Court commit an error of law by granting relief from the automatic bankruptcy stay on behalf of a mortgage holder on property owned by the Debtor because the bankruptcy was filed after the foreclosure sale on the property?" (Appellant's Br. 1, D. Md. No. JKB-17-3255, ECF No. 5.)

---

[1] MidFirst Bank stated in its motion for relief from the automatic stay that the foreclosure sale resulted in a sale of the property to MidFirst Bank at 11:04 a.m. on July 20, 2017. (Mot. 2, Bankr. D. Md. No. 17-19857, ECF No. 19.)

2

*IV. Analysis*

Schweiger's basic contention is that lifting the automatic stay was in error because he has a right of redemption after the foreclosure sale and before ratification of the foreclosure sale. After reviewing the applicable statutes and case law, the Court concludes Schweiger's argument is without merit.

Schweiger relies upon 11 U.S.C. § 1322(c)(1) as granting him a right of redemption in the circumstances presented here. Section 1322 specifies what should be included in a Chapter 13 plan for restructuring an individual's debts. Accordingly, such a plan may, under § 1322(b)(2), "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." Then, "[n]otwithstanding subsection (b)(2) and applicable nonbankruptcy law[,] a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1).

Schweiger argues mightily that what happened on July 20, 2017, prior to the filing of his bankruptcy petition and well prior to the conversion of his petition to Chapter 13, was something less than a foreclosure sale because it must be ratified in order to complete the sale. Reference to clearly stated Maryland law—the "applicable nonbankruptcy law"—defeats his argument.

Maryland statutory law restricts a debtor's right to cure a default with respect to residential property: "The mortgagor or grantor of residential property has the right to cure the default by paying all past due payments, penalties, and fees and reinstate the loan at any time up to 1 business day before the foreclosure sale occurs." Md. Code Ann., Real Prop.

3

§ 7-105.1(p)(1) (West 2017). Even if this deadline for cure is extended by 18 U.S.C. § 1322(c)(1) up to the moment of the foreclosure sale, Maryland law shows that Schweiger possessed no right of redemption from that point forward.

The deed of trust granted by Schweiger to secure his mortgage loan is considered a mortgage. Md. Code Ann., Real Prop. § 7-101(a) ("Every deed which by any other writing appears to have been intended only as security for payment of an indebtedness or performance of an obligation, though expressed as an absolute grant is considered a mortgage."). A deed of trust "means only a deed of trust which secures a debt or the performance of an obligation . . . ." Md. Code Ann., Real Prop. § 1-101(c), (d). In his deed of trust, Schweiger granted legal title of the property to the deed's beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), who serves "solely as nominee" for the lender. (Deed of Trust, p. 2.) "A mortgage instrument (or deed of trust) conveys legal title to the real property to the mortgagee, but the mortgagee's title is not absolute and is treated in equity as security for payment. The conveyance is defeated upon performance . . . ." *In re Bethesda Air Rights Ltd. P'ship*, 117 B.R. 202, 208 (Bankr. D. Md. 1990). Consequently, "[t]hrough the right of possession until default under the mortgage, and the equity of redemption, the mortgagor is . . . regarded as the real and beneficial owner of the mortgaged premises as to all persons except the mortgagee and those claiming under him." *Williams v. Safe Deposit & Trust Co.*, 175 A. 331, 333 (Md. 1934), *quoted in Bethesda Air Rights*, 117 B.R. at 208-09. Thus, in the absence of default, it may be said that the mortgagor has equitable title to the property while the mortgagee has legal title to the property.

However, after default, the mortgagee can exercise its right of foreclosure, as was provided in Schweiger's deed of trust:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with

> law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . .

(Deed of Trust, p. 2.) Long-standing Maryland law provides that "the sale of the mortgaged premises under the power of sale in the mortgage deed virtually foreclose[s] the mortgage and divest[s] all rights of redemption which had remained in the mortgagor until the sale." *Union Trust Co. v. Biggs*, 137 A. 509, 512 (Md. 1927). In a 1967 case, the Maryland Court of Appeals specifically addressed the same contention made here by Schweiger, *i.e.*, that the right of redemption continued until the foreclosure sale is ratified by the court:

> The final claim of the appellants that they had a right to redeem the property at any time prior to the ratification of the sale is also without merit inasmuch as the right of redemption was divested by the valid foreclosure sale. Although the jurisdiction of equity does not become complete until the filing of the report of sale, nevertheless the sale in effect foreclosed the mortgage and divested the mortgagors of all right of redemption, and unless satisfactory proof is shown before final ratification that the sale should be set aside, which was not done in this case, all rights of the mortgagors in the land are deemed to have ceased to exist as of the date of the sale.

*Butler v. Daum*, 226 A.2d 261, 264 (Md. 1967) (citations omitted). Although ratification occurs some period of time after the foreclosure sale, once ratified, the foreclosure purchaser's title, both equitable and legal, is retroactive to the time of sale. *Merryman v. Bremmer*, 241 A.2d 558, 563 (Md. 1968).

Because the right of redemption does not continue past the foreclosure sale, Schweiger's attempt to create such from 11 U.S.C. § 1322 (c)(1) fails. That subsection permits a mortgagor to cure a default up until the foreclosure sale, conducted in accordance with applicable nonbankruptcy law. Schweiger has made no argument that the foreclosure sale at issue here was not conducted according to Maryland law.

Schweiger refers the Court to a case decided by another judge of this district. In *Ocwen Loan Servicing, LLC v. Kameni*, Civ. No. PJM-14-877, 2014 WL 3563658 (D. Md. July 16, 2014), *aff'd*, 589 F. App'x 145 (4th Cir. 2015) (unreported), the question arose as to whether the bankruptcy court could enter a *nunc pro tunc* order to invalidate a foreclosure sale that occurred after the debtor filed a bankruptcy petition and an emergency motion for an automatic stay[2] but before the bankruptcy court held a hearing on the debtor's motion. Judge Messitte affirmed the stay order, but not for the reasons argued on appeal; further, he assumed without deciding that the *nunc pro tunc* nature of the stay order was valid. 2014 WL 3563658, at *1-2. His focus was on whether the bankruptcy court could enter the order at a later date and, from that date forward, whether it would be effective as to the ratification process that was yet to occur. He concluded it was, finding it would be inequitable for the debtor not to receive the benefit of the automatic stay due to the bankruptcy court's misstep in not timely scheduling a hearing on the debtor's motion for stay. *Id.* at *2.

The *Kameni* opinion did not announce a new rule of bankruptcy law, contrary to Schweiger's argument in the instant appeal.[3] Further, it was consistent with prior decisions of the Bankruptcy Court that determined the appropriateness, even necessity, for a mortgagee to seek relief from an automatic stay in order to proceed to ratification of a foreclosure sale occurring prior to the filing of a bankruptcy petition. *See In re May*, 546 B.R. 639, 640-42

---

[2] Having filed two prior bankruptcy petitions within the preceding twelve months, the debtor was not entitled to the "automatic" stay that typically occurs upon the filing of a bankruptcy petition. Instead, the debtor would have to apply for the stay pursuant to 11 U.S.C. § 362(c)(4)(B).

[3] A decision by one district judge does not bind another district judge in a different case. Indeed, a district judge may rule in a subsequent case differently from that judge's ruling in a prior case. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citing 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)). *See also Nat'l Union Fire Ins. Co. v. Allfirst Bank*, 282 F. Supp. 2d 339, 351 (D. Md. 2003) (same; but noting that another district judge's decision is entitled to substantial deference as persuasive authority). Schweiger's argument that *Kameni* is "controlling" as to this appeal, therefore, is mistaken. Further, as noted *infra*, *Kameni* did not purport to overrule, or have the effect of overruling, the Bankruptcy Court precedent relied upon by the court below in the instant appeal.

(Bankr. D. Md. 2016) (concluding *Kameni* did not overrule Bankruptcy Court decisions); *In re Denny*, 242 B.R. 593, 599 (Bankr. D. Md. 1999) (relief from automatic stay necessary for mortgagee to obtain ratification of pre-petition foreclosure sale). *Kameni* is factually distinguishable as well since the foreclosure sale there occurred *after* the bankruptcy petition was filed. In contrast, the foreclosure sale in Schweiger's case occurred *before* he filed his bankruptcy petition. As the Bankruptcy Court said in *Denny*, "A petition filed subsequent to the falling of the auctioneer's gavel simply comes too late." 242 B.R. at 599. And as the *May* opinion noted, "The relief granted, namely, relief from the automatic stay, . . . will protect the debtor's right under Maryland law to raise any objections he may have to ratification of the sale, which occurred prior to the bankruptcy filing." 546 B.R. at 641-42. That limited right is the only one now possessed by Schweiger before ratification of the pre-petition foreclosure sale on what was formerly his property.

Schweiger makes a brief additional argument that the subject of MidFirst's motion for relief from the automatic stay was not one within the confines of the statute that authorizes the Bankruptcy Court to grant such relief. (Appellant's Br. 9.) Since MidFirst's motion fits squarely within the statute permitting the Bankruptcy Court to decide matters relating to either the debtor's equity in property, 11 U.S.C. § 362(d)(2)(A), or the adequacy of protection for MidFirst's interest in the property, § 362(d)(1), Schweiger's final argument is without merit.

## V. Conclusion

The Court concludes the Bankruptcy Court did not err in granting MidFirst's motion for relief from the automatic stay. A separate order will issue.

DATED this 23rd day of March, 2018.

                                    BY THE COURT:

                                    _____/s/_____
                                    James K. Bredar
                                    Chief Judge